**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARKET SURGE, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25 C 6593** |
| | ) | |
| **ASHKI PHOTOGRAPHY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Ashki Photography, Inc., subscribed to an online marketing platform operated by Market Surge, LLC. After Market Surge refused to transfer Ashki's data from the platform, Ashki threatened to file a lawsuit in Idaho. In response, Market Surge filed the present lawsuit in state court in late January 2025, seeking a declaratory judgment that it had no obligation to transfer Ashki's data and that Ashki was bound by Market Surge's terms and conditions. Ashki removed the case to federal court in June 2025. Ashki asserted counterclaims, and the case proceeded into discovery. In late December 2025, Market Surge filed a motion to compel discovery, contending that Ashki had failed to respond at all to Market Surge's discovery requests.

In a status report filed in January 2026, Market Surge reported that Ashki had made an offer for entry of judgment granting Market Surge the relief it sought and dismissing Ashki's counterclaims, but providing that each side would bear its own attorney's fees. Market Surge said it had declined to accept this offer and made it clear that it was, in fact, seeking attorney's fees, as it had asserted in its complaint in this

case. *See* dkt. 39 at 4 (status report); dkt. 1-2 ¶ 46 (complaint, claiming an entitlement to fees and citing the indemnification clause in the parties' agreement), *id.* p. 10 (prayer for relief, seeking fees).

At a status hearing in January 2026, Ashki's counsel reported that his client did not want to continue to litigate. The Court suggested that the parties agree to a declaratory judgment and also agree to submit the question of attorney's fees to the Court. Ashki then filed, in mid-February, a motion seeking entry of a declaratory judgment, but its proposed judgment stated that each party would bear its own attorney's fees. The Court held a telephonic hearing on February 20, 2026 at which the matter was discussed. The Court pointed out that Ashki's proposed judgment, contrary to the Court's earlier suggestion, did not leave the matter of fees for later determination. Ashki's counsel minimized this, saying that "we just wanted to be clear that we're not in any way, you know, waiving our objection to their request for fees."

The Court proposed to remove from Ashki's proposed declaratory judgment the provisions adjudicating the request for fees so that the availability of fees would be litigated following entry of the judgment. Counsel for both Ashki and Marget Surge agreed. The Court then entered a declaratory judgment in Market Surge's favor on the underlying claims and reserved the question of attorney's fees, which the parties thereafter briefed. For the reasons stated below, the Court grants in part and denies in part Market Surge's petition for attorney's fees.

## Background

Market Surge is a marketing agency serving small and medium-sized businesses. Ashki Photography is a photography business located in Idaho and

specializing in high-end boudoir portrait services. Ashki subscribed to Market Surge in October 2021. It used Market Surge for client communication and payment. Ashki also built a customer relationship management (CRM) system through Market Surge that supported several business functions.

Previously, in April 2020, Ashki hired La Marie and Co., another marketing business providing a similar product. Ashki ended its relationship with La Marie in April 2023. Meanwhile, La Marie and Market Surge entered a non-disclosure agreement in early 2022, and La Marie transferred some of its clients to the Market Surge platform. La Marie is not a party to this case.

Market Surge users agree to its terms and conditions upon registering online and each time they sign into the Market Surge platform. The terms and conditions contain a forum selection clause providing that the subscriber "agree[s] and hereby submit[s] to the exclusive personal jurisdiction and venue to Evanston, Illinois or appropriate federal/state court of Illinois with respect to such matters controlled by that court." Mot. for Fees, Pine Decl., Ex. 1, § 12(c). The conditions also provide:

> You are entitled to export your customer data and any intellectual property you own in the account in accordance with available export features within the platform. MarketSurge is under no obligation to approve entire account transfers to another Go High Level Provider or to transfer proprietary content created by MarketSurge partners or the MarketSurge team. In the event that MarketSurge does approve an account transfer, there will be a minimum transfer fee of $250 per account.

*Id.* § 11(c).

Market Surge alleges that when Ashki registered online for its services in October 2021, it accepted the terms and conditions. It contends that Ashki also accepted the terms and conditions by signing into the platform at other points, including on two specific dates in December 2024 and January 2025. Ashki maintained that it

registered for Market Surge by telephone and did not agree to its terms and conditions. Answer ¶ 24; Am. Counterclaim ¶ 13.

Discovery in this lawsuit revealed that Ashki's owner, Cynthia Wanyonyi, registered for Market Surge online. Using Market Surge's online platform, she submitted a payment form and then sent a message to Market Surge stating, "I meant to sign up for the trial and I accidentally just signed up for the year . . . any chance I can switch to trial for now?". Mot. for Fees, Pine Decl., Ex. 2.

In May 2024, Ashki asked Market Surge to transfer its data, including customer information and photos, to a different marketing platform. La Marie opposed the transfer, maintaining that Ashki had retained its intellectual property and that transfer of Ashki's data would violate the non-disclosure agreement between Market Surge and La Marie. Market Surge refused to transfer Ashki's data. Market Surge proposed taking snapshots of the data, but Ashki said snapshots would be inadequate. Market Surge later refused to transfer even the snapshots.

Without its data, Ashki says it lost access to thousands of client email and SMS communications, its custom workflows and forms, sales data and purchase histories, and booking calendars. Ashki's booking pipeline was disrupted for several months. *See id.*, Ex. 5 ¶¶ 3, 7.

Ashki repeatedly threatened to sue Market Surge in Idaho if it did not transfer Ashki's data. In January 2025, Ashki said it would file suit in Idaho on January 31, 2025 if Market Surge did not transfer its data by then.

In response, in January 2025, Market Surge sued Ashki in the Circuit Court of Cook County, Illinois, seeking a declaratory judgment stating that it had no obligation to

transfer Ashki's data under its terms and conditions; that Ashki was bound by its terms and conditions; and that any lawsuit had to be brought in Illinois. Market Surge also sought costs and attorney's fees.

In June 2025, Ashki removed the case to federal court and asserted several counterclaims, which Market Surge moved to dismiss. In response, Ashki dropped its counterclaims for conversion, negligence, and tortious interference with prospective economic advantage, maintaining a single amended counterclaim for breach of contract. In its counterclaim, Ashki alleged that it was not subject to the terms and conditions and that Market Surge breached the parties' agreement by refusing to transfer its data. In the alternative, Ashki maintained that the terms and conditions originally did not permit Market Surge to refuse to transfer its data. It alleged that after Ashki requested a data transfer, Market Surge added a term and condition exempting it from responsibility for transferring Ashki's data. Ashki estimated its losses to be between $450,000 and $700,000, including lost revenue and the cost to rebuild its CRM infrastructure. *See id.*, Ex. 5 ¶ 10.

Market Surge moved to dismiss Ashki's breach of contract counterclaim. The Court denied the motion, as Ashki identified a provision of the terms and conditions stating that Ashki had a right to transfer its data if it paid Market Surge's fees.

The case proceeded into discovery. Ashki failed to respond to Market Surge's written discovery requests. Market Surge filed a motion to compel approximately three months after the discovery responses were due and after efforts to reach an agreement with Ashki's counsel.

As discussed earlier, in December 2025, Ashki submitted a written offer of

judgment to Market Surge for entry of a declaratory judgment in Market Surge's favor, but denying an award of attorney's fees and costs. Ashki did not accept this due to the latter provision. As the Court has discussed, the parties ultimately agreed to submit the dispute over the availability of fees to the Court. In February 2026, the Court entered what amounted to an agreed declaratory judgment stating that pursuant to its terms and conditions, Market Surge had no obligation to transfer Ashki's data and that the terms and conditions were enforceable. The Court entered a modified declaratory judgment including these conditions and dismissing Ashki's counterclaim with prejudice. Market Surge now seeks $59,132.50 in attorney's fees and $490.97 in costs.

## Discussion

### A. Entitlement to indemnification for attorney's fees

Market Surge seeks attorney's fees under section 10 of the terms and conditions. Section 10 provides, in relevant part, that Ashki:

> agree[s] to defend, indemnify, and hold us and our Affiliates [harmless][1] against all demands, claims, actions, proceedings, damages, liabilities, losses, fees, costs or expenses (including without limitation reasonable attorneys' fees and the costs of any investigation) directly or indirectly arising from or in any way connected with: (1) use of or reliance on information or data supplied or to be supplied by you; (2) any breach of or default under the terms or conditions of this Agreement by You; (3) the wrongful use or possession of any Marketsurge Property by you; (4) any negligence, gross negligence or willful misconduct by You or your employees or agents; and/or (5) any disputes between (i) You and other Users[,] (ii) You and your client(s)[,] and/or (iii) your clients.

*Id.*, Ex. 1 § 10. The parties' initial dispute concerns whether section 10 applies here at

[1] The parties omitted the word "harmless," which is part of the typical language of an indemnification clause. *See, e.g.*, *City of Chicago v. Motive Power Sys., Inc.*, No. 19 C 1817, 2019 WL 2994504, at *1 (N.D. Ill. July 9, 2019) ("[Motiv] must defend, indemnify, keep and hold harmless the City . . . ."). The omission is, however, immaterial for purposes of the present motion.

all. Ashki says that the indemnification obligation applies only to claims by third parties; Market Surge says it applies to the present dispute between the contracting parties.

A separate term states that the "statutes and laws of Illinois shall be controlling, without regard to conflict of law principles thereof." *Id.*, Ex. 1 § 12(c). The parties agree that Illinois law controls interpretation of the terms and conditions. In Illinois, much like any other contract, "an indemnity agreement must 'be given a fair and reasonable interpretation based upon a consideration of all of its language and provisions.'" *Open Kitchens, Inc. v. Gullo Int'l Dev. Corp.*, 126 Ill. App. 3d 62, 65, 466 N.E.2d 1313, 1315 (1984) (quoting *Tatar v. Maxon Constr. Co.*, 54 Ill.2d 64, 67, 294 N.E.2d 272, 274 (1973)). A court should "avoid a construction that would render a provision superfluous." *Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp., Inc.*, 762 F.3d 673, 679 (7th Cir. 2014).

"In Illinois, . . . indemnity clauses . . . are not necessarily limited to claims against third parties[,]" in other words, individuals other than the contracting parties. *Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 3d 718, 725 (N.D. Ill. 2021); *see also Rexam Beverage Can Co. v. Bolger*, 620 F.3d 718, 735 (7th Cir. 2010) (citing Black's Law Dictionary 837 (9th ed. 2009), which defines "indemnify" as "[t]o reimburse (another) for a loss suffered because of a third party's *or one's own* act or default" (emphasis added)). Illinois is in the minority; in most states, indemnification agreements do not cover claims between contracting parties unless expressly permitted by the agreement. *ImagePoint, Inc. ex rel. Martin v. BFS Retail & Com. Operations, LLC*, No. 13 C 4339, 2014 WL 7335167, at *8 (N.D. Ill. Dec. 19, 2014).

"[W]hether a particular indemnification agreement actually does cover claims by

a party [to the agreement] depends on the language of the agreement." *Walgreen Co. v. Panasonic Healthcare Corp. of N. Am.*, No. 17 C 2120, 2017 WL 6731973, at *4 (N.D. Ill. Dec. 29, 2017) (quoting *Allied Waste Transp., Inc. v. Bellemead Dev. Corp.*, 2014 WL 4414510, at *7 (N.D. Ill. Sept. 8, 2014)). "[A] party wishing to narrow an indemnification clause to third-party damage is obligated to limit the scope of the clause expressly; and absent such express limitation, indemnification clauses may apply to damage suffered by the contracting parties themselves." *Water Tower Realty Co. v. Fordham 25 E. Superior, LLC*, 404 Ill. App. 3d 658, 666, 936 N.E.2d 1127, 1133–34 (2010) (citation omitted). "A contract may *implicitly* limit indemnification to third parties, however, if it contains language inconsistent with first-party indemnification." *NAR Bus. Park, LLC v. Ozark Auto. Distribs., LLC*, 430 F. Supp. 3d 443, 461 (N.D. Ill. 2019) (collecting cases).

No language in section 10 expressly limits it to third-party claims. In fact, it references several types of claims that would only arise between the parties, Market Surge and Ashki, such as claims for "any breach of or default under the terms or conditions of this Agreement by You," and for "the wrongful use or possession of any Marketsurge Property by You[.]" Mot. for Fees, Pine Decl., Ex. 1, Section 10. Reading the indemnification clause to cover only claims involving third parties would make these phrases meaningless. Section 10's indemnification provision covers both first- and third-party claims, encompassing "*all* demands, claims, actions, proceedings, damages, liabilities, losses, fees, costs or expenses[.]" *Id.* (emphasis added)*; see Am. Nat. Bank & Tr. Co. of Chi. v. Reg'l Transp. Auth.*, 125 F.3d 420, 433–34 (7th Cir. 1997) (holding that a reasonable jury could conclude that a broadly-worded indemnification provision

covering "any claim, damages, losses, or expenses" encompassed both first- and third-party claims).

Section 10 also employs the term "defend," which seems inconsistent with coverage of first-party claims. But that alone does not override the express language providing for both first- and third-party claims. Even when indemnification clauses contain language providing for defense, they cover first- and third-party claims when "there is no express language limiting the scope of the clause to only third-party claims, and the definition of losses is quite broad," as is the case here. *See Motive Power Sys., Inc.*, 2019 WL 2994504, at *2 (denying motion to dismiss first-party indemnification claim); *ImagePoint*, 2014 WL 7335167, at *8 (interpreting indemnification clause that included the term "defend" to cover first-party claims); *Water Tower*, 404 Ill. App. 3d at 666, 936 N.E.2d at 1133 (same). *But see Open Kitchens*, 126 Ill. App. 3d at 65, 466 N.E.2d at 1315 (holding that duty to defend "indicates that the indemnity was intended to arise only in the context of liability imposed on plaintiff as a result of losses or injuries incurred by third parties"). Other than the term "defend," there are no other terms in tension with the first-party claims expressly covered by the provision. *Cf. Conviser v. DePaul Univ.*, 649 F. Supp. 3d 686, 711–12 (N.D. Ill. 2023) (holding that indemnification clause extended only to third-party claims when it included a duty to defend, notice provision, and settlement approval requirement). Market Surge is therefore correct that the indemnification provision applies to the instant claim between the contracting parties.

Ashki's next argument is that Market Surge's request for attorney's fees under the indemnification provision fails because to recover, it would have had to file a claim

for indemnification in its complaint against Ashki, which Market Surge did not do.

Under Federal Rule of Civil Procedure 54, "claim[s] for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). "The language of the contract and the nature of the claim are the dispositive factors concerning whether the fees are an element of damages or collateral litigation costs." *Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1039 (5th Cir. 2014). "Fees for work done during the case should be sought after decision, when the prevailing party has been identified and it is possible to quantify the award." *Rissman v. Rissman*, 229 F.3d 586, 588 (7th Cir. 2000).

"[U]nder clear Seventh Circuit precedent, while a jury determines whether a party is entitled to fees to the extent that issue is ambiguous, a judge determines the amount of attorneys' fees and costs to be awarded after the conclusion of the trial." *BP Amoco Chem. Co. v. Flint Hills Res. LLC*, No. 05 C 5661, 2009 WL 10869369, at *2 (N.D. Ill. Aug. 4, 2009) (St. Eve, J.); *see E. Trading Co. v. Refco, Inc.*, 229 F.3d 617, 627 (7th Cir. 2000), *amended on denial of reh'g* (Nov. 29, 2000) (holding that absent an "issue of entitlement to attorneys' fees to submit to the jury[,] . . . [t]he issue of attorneys' fees (including amount) [is] therefore an issue to be resolved after the trial on the basis of the judgment entered at the trial."). "[H]aving a judge decide the amount of fees post-judgment under a contractual indemnification clause is consistent with Rule 54(d)(2)(A)." *BP Amoco*, 2009 WL 10869369, at *2 (summarizing reasons why a judge is better equipped than a jury to assess attorney's fees).

Section 10 requires indemnification for "costs or expenses (including without

limitation reasonable attorneys' fees and the costs of any investigation)[.]" Mot. for Fees, Pine Decl., Ex. 1. Ashki correctly states that section 10 is not a prevailing party provision; it requires indemnification of attorney's fees in certain matters regardless of whether Market Surge prevails in the underlying litigation. But that is immaterial regarding who determines the recoverability of fees. *BP Amoco*, 2009 WL 10869369, at *2. Courts must "strictly construe" attorney's fees provisions, reading "nothing more—but also nothing less—than the letter of the text." *Erlenbush v. Largent*, 353 Ill. App. 3d 949, 952, 819 N.E.2d 1186, 1189–90 (2004). The text of section 10 does not require that Market Surge prove its costs or attorney's fees at trial or bring a separate cause of action for indemnification of attorney's fees. *See, e.g.*, *Willis Cap. LLC v. Belvedere Trading LLC*, 2015 IL App (1st) 132183 ¶ 25, 29 N.E.3d 1087 (holding that the trial court erred in awarding fees pursuant to an action to invalidate a settlement agreement where a fee provision stated that "attorney fees and expenses may be awarded to a prevailing party in 'an action brought by any party to enforce the terms' of the agreement"). Although Market Surge could have asserted a claim under the indemnification provision as a separate count, section 10 and Rule 54 do not require it to do so.

Furthermore, and significantly, Ashki was unquestionably on notice *from Market Surge's complaint* that it was seeking a fee award under section 10 of the terms and conditions. *See* Compl. ¶ 46. Indeed, the core of the dispute between the parties in the last few months the lawsuit was pending involved Market Surge's request for fees and Ashki's contention that Market Surge could not recover fees.

**B. Willful misconduct**

The Court turns next to the availability of fees under the terms and conditions.

Section 10 permits indemnification in specific circumstances, including "any negligence, gross negligence or willful misconduct by You or your employees or agents[.]" Mot. for Fees, Pine Decl., Ex. 1. Market Surge contends that it is entitled to fees because Ashki engaged in willful misconduct.

The Seventh Circuit has noted that "'willful misconduct,' a concept from tort law, in [a] contract for business services strikes us as at best an awkward fit." *Reid Hosp. & Health Care Servs., Inc. v. Conifer Revenue Cycle Sols., LLC*, 8 F.4th 642, 655 (7th Cir. 2021). In tort law, state of mind differentiates intentional and negligent torts. *See id.* But "[c]ontract law has evolved to encourage, or at least to tolerate, deliberate breaches when the breaching party will come out ahead financially if it both breaches and pays the other party damages." *Id.* The Seventh Circuit went on to attempt to "understand what [the parties] intended" with reference to Indiana common law and statutes employing the term "willful misconduct." *See id.* at 655–57 (holding that under Indiana law, willful misconduct encompasses reckless conduct and "does not require intent to harm; knowledge of probable harm may be enough[,]" *id.* at 657). The Court will do the same here.

Illinois courts more often use the phrases "willful and wanton misconduct" or "willful and wanton conduct" than "willful misconduct." "In Illinois there are two varieties of willful and wanton conduct, intentional and reckless." *Kirwan v. Lincolnshire-Riverwoods Fire Prot. Dist.*, 349 Ill. App. 3d 150, 155, 811 N.E.2d 1259, 1263 (2004). Intentional misconduct requires "'actual' or 'deliberate' intent to harm[,]" *id.* (quoting Illinois Pattern Jury Instructions, Civil, No. 14.01 (1995)), while "reckless willful and wanton conduct falls in between actual intent and mere negligence." *Id.*

This definition applies in various contexts of Illinois law. *See Am. Nat. Bank & Tr. Co. v. City of Chicago*, 192 Ill. 2d 274, 285, 735 N.E.2d 551, 557 (2000) (defining willful and wanton misconduct under the Emergency Medical Services Systems Act, 210 Ill. Comp. Stat. Ann. 50/3.150, as an "intentional [act or an act] . . . committed under circumstances exhibiting a reckless disregard for the safety of others" (cleaned up)); 745 Ill. Comp. Stat. Ann. 10/1-210 (Illinois Local Governmental and Governmental Employees Tort Immunity Act; defining willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property."); *Soni v. Dep't of Emp. Sec.*, 2024 IL App (1st) 220137, ¶ 69, 256 N.E.3d 1118, 1132 (Illinois law bars unemployment benefits for employees who engaged in willful misconduct, when an employee "is aware of a company rule and consciously disregards it" (quoting *Alt. Staffing, Inc. v. Ill. Dep't of Emp. Sec.*, 2012 IL App (1st) 113332, ¶ 31, 983 N.E.2d 1036, 1043).

Consistent with this usage, the Court concludes that the term "willful" in the terms and conditions covers an intentional act or failure to act and an action or omission with conscious disregard of a duty. As for the term "misconduct," the focus appears to be on the parties' duties to one another and the Court. *See Zhou v. Neves Grp. Prop. Mgmt., Inc.*, No. 21 C 2091, 2024 WL 6881605, at *9 (C.D. Ill. June 20, 2024) (defining willful misconduct in a contract as "an intentional act, or intentional failure to perform an act the law requires, that was a dereliction of duty or dishonest or improper behavior on the part of the defendant" (quoting *Home Healthcare of Ill., Inc. v. Jesk*, 2017 IL App (1st) 162482, ¶ 60, 112 N.E.3d 594, 609)).

Market Surge contends that Ashki engaged in willful misconduct by "maintain[ing] an objectively false position . . . regarding its online registration and acceptance of the Terms and Conditions, asserting and then abandoning baseless counterclaims, failing to respond to discovery, disregarding court-ordered deadlines[,] and ultimately abandoning its defense after prolonged litigation[.]" Mot. for Fees at 7 (citations omitted).[2] The first item in this list references Ashki's contention that it had registered for Market Surge by telephone and never accepted the terms and conditions of use of the platform. In fact, however, Ashki's owner, Cynthia Wanyonyi, registered for Market Surge online, submitted a two-step payment form, and sent a message to Market Surge stating, "I meant to sign up for the trial and I accidently just signed up for the year . . . any chance I can switch to trial for now?". *Id.*, Pine Decl., Ex. 2. Market Surge found this message in July 2025 and notified Ashki's counsel, to no effect. Market Surge also contends that Ashki accepted the terms and conditions on other specific dates when it logged into the platform, as all users must do to access the platform.

It is reasonable to believe that Wanyonyi could have forgotten the specific circumstances of her registration for Market Surge three-and-a-half years before the present litigation began. And it is plausible that Ashki might not have realized prior to the litigation that it had re-agreed to the terms and conditions each of the many times it logged onto Market Surge's platform. For these reasons, the Court is not persuaded

[2] Market Surge's reply adds to its list of willful misconduct and mentions Ashki's threat to sue in Idaho in violation of the forum selection clause in the terms and conditions. Reply at 7. That event was not mentioned as part of this argument in Market Surge's opening brief, so Ashki did not have the opportunity to respond. "Just as undeveloped arguments are waived, so are arguments raised for the first time in reply briefs." *United States v. Williams*, 85 F.4th 844, 849 (7th Cir. 2023). The Court does not address whether Ashki's threat to sue in Idaho was willful misconduct.

that Ashki engaged in any willful misconduct before the litigation started or in initially opposing Market Surge's claims. But once the circumstances of Ashki's initial registration and the multiple re-agreements via logons were made known to it during the pendency of this suit, it was abundantly clear that Ashki could no longer viably maintain that it had never agreed to the terms and conditions. Ashki's continued denial of agreement to the terms and conditions after that amounts to dishonest and improper behavior on its part.

The exact date of this is less than clear. Market Surge's counsel puts this in late July 2025 but does not provide a specific date. *See id.*, Pine Decl. ¶ 35. In the Court's view, following the passage of a reasonable period for Ashki to confirm MarketSurge's contention—thirty days seems appropriate—it could no longer contend that the terms and conditions did not apply, and Ashki acted dishonestly and improperly to the extent it continued to maintain its earlier denial. And Ashki never contended that the terms and conditions, if they applied, were unenforceable or invalid.[3] Thus following MarketSurge's evidence that Ashki registered online and repeatedly agreed to the terms and conditions, Ashki engaged in willful misconduct to the extent it was defending the case by denying the application of the terms and conditions. At a minimum, its conduct in this regard amounts to conscious disregard for the contractual rights of Market Surge and its duty of candor to the Court. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 859 (Fed. Cir. 2010) (defining litigation misconduct as including "bringing

[3] Ashki alleged in a counterclaim that Market Surge modified the terms and conditions sometime after it registered, but there is no evidence in the record supporting this claim. Certain forms of modification would contradict the terms and conditions themselves. *See* Mot. for Fees, Pine Decl., Ex. 1, Section 12(h) ("Terms may NOT be altered, supplemented, or amended by the use of any other document(s).").

vexatious or unjustified suits, discovery abuses, failure to obey orders of the court, or acts that unnecessarily prolong litigation").

The Court is unpersuaded by Market Surge's other assertions of willful misconduct. In brief, it was not willful misconduct for Ashki to assert—at least initially—counterclaims that survived Market Surge's motion to dismiss. And the amended counterclaim that it asserted in August 2025 (after the disclosure in July 2025 just discussed) did not deny the applicability of the terms and conditions but rather contended Market Surge had breached them. Second, the Court is not persuaded that Ashki's delays in responding to discovery amounted to *willful* (or reckless) misconduct; such delays, unfortunately, are endemic in litigation. Finally, the timing of Ashki's expression of willingness to agree to a declaratory judgment does not qualify. Though that should have come earlier, the Court sees nothing to suggest that Ashki was deliberately dilatory in proposing this. In particular, as the Court has noted, at that point the parties' core dispute involved the availability of attorney's fees, on which Ashki presented positions that were reasonable (though ultimately lacking in merit).

It is unclear to the Court exactly what proportion of Market Surge's claimed fees and expenses fall within the scope of what the Court has concluded Market Surge may recover under section 10 of the terms and conditions. Further submissions will be required. The Court will return to this point in the conclusion of this opinion.

**C. Rule 68 offer**

Ashki argues that Market Surge cannot recover fees for work that took place after Market Surge rejected Ashki's Rule 68 offer of judgment in December 2025. Under Federal Rule of Civil Procedure 68, "a party defending against a claim may serve on an

opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). If a Rule 68 offer is not accepted and "the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d).

As described to the Court, the proposed Rule 68 offer required each party to bear its own attorney's fees, while the declaratory judgment left it to the Court adjudicate attorney's fees. The Court has assessed the issues around attorney's fees in this opinion, holding that Market Surge is entitled to attorney's fees under the indemnification provision and that Ashki engaged in willful misconduct triggering indemnification for fees. The ultimate judgment is more favorable to Market Surge than the Rule 68 offer, which did not allow Market Surge to recover fees. No shifting of costs under Rule 68 is warranted.

**Conclusion**

For the reasons stated above, the Court grants in part and denies in part the plaintiff's petition for attorney's fees [dkt. 51]. Market Surge is directed to file by August 28, 2026 a supplemental memorandum identifying and quantifying the fee and expenses it is entitled to recover under the Court's ruling. Ashki is given until September 11, 2026 to file a response. The Court sets the case for a telephonic status hearing on September 14, 2026 at 8:55 a.m., using call-in number 650-479-3207, access code 2305-915-8729.

MATTHEW F. KENNELLY
United States District Judge

Date: August 14, 2026